IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **CURT HUBBERT** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NUMBER: |
| ) | 2:20-cv-970 |
| **STATE OF ALABAMA** ) | |
| **DEPARTMENT OF** ) | |
| **TRANSPORTATION,** ) | JURY DEMAND |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is an action for legal and equitable relief to redress unlawful discrimination on the basis of race against the Plaintiff. The suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. §§ 2000e et seq. (hereinafter "Title VII"). The Plaintiff requests a trial by jury of all issues so triable.

### II. PARTIES

2. Plaintiff, Curt Hubbert, is an African-American male over the age of nineteen (19) years and a resident of Marion County, Alabama.

1

3. Defendant State of Alabama Department of Transportation ("ALDOT") is an employer subject to suit under Title VII of the Civil Rights Act of 1964.

4. Defendant ALDOT has more than fifteen (15) employees and has its principal place of business in Montgomery County, Alabama.

### III. JURISDICTION AND VENUE

5. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4).

6. Venue is proper in this Court and this judicial division and district. 28 U.S.C. 1391(b) and 42 U.S.C. § 2000e-5(f)(3). Title VII provides that actions may be brought in any district in the State where "the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice" 42 U.S.C. § 2000e-5(f)(3).

### IV. ADMINISTRATIVE EXHAUSTION

7. Plaintiff has met all administrative conditions precedent for filing this case under Title VII. He filed a timely charge with the Equal Employment Opportunity Commission alleging retaliation and discrimination on the basis of race and is filing this suit within 90 days of receiving his notice of his right to sue which was received on August 28, 2020.

## V. STATEMENT OF FACTS

8. Plaintiff graduated from the University of Alabama in 1975 with a Bachelor of Science degree in Civil Engineering.

9. Plaintiff also received his Engineering-in Training certificate in 1975.

10. Throughout the period from 1978 to at least 1983, the Defendant effectively precluded most African-Americans from applying for entry-level graduate civil engineering positions by requiring that applicants graduate from an "accredited" civil engineering program in the State of Alabama and by refusing to recruit applicants from accredited civil engineering programs in other states. This condition precedent for applying to be a graduate civil engineer eliminated the Plaintiff and all other African American graduates who graduated from Alabama's historically black colleges and universities whose civil engineering programs were denied the resources necessary to gain accreditation due to Alabama's history of racial segregation and discrimination in its public schools, colleges and unversities, such as Alabama A&M. At the same time, however, the Defendant had over 700 hundred white Civil Engineers who had been appointed to civil engineering positions with only a high school diploma and no college degree of any kind. Defendant's policy against recruiting at, or accepting applications from, the historically black colleges in Alabama meant that all recruitment of college trained engineers was directed exclusively at the two historically white schools which had

been provided the resources necessary to gain accreditation for their civil engineeeing programs, such as Auburn University and the University of Alabama.

11.     Defendant' accreditation requirement for applicants interested in graduate civil engineering jobs or trainee positions perpetuated Defendant's historical racial discrimination against African-Americans, either intentionally, by disparate impact or both.

12.     Defendant's accreditation requirement for graduate civil engineering jobs was part of a battery of racially discriminatory devices and practices that denied the Plaintiff and other African-Americans employment opportunities because of their race and color, either intentionally, by disparate impact or both. By 1978, the Defendant had never had an African-American civil engineer in any capacity despite the fact that ALDOT employed more than 700 civil engineers at any one time and approximately 30% of the State of Alabama was African-American. The black rate of rejection based on the accreditation requirement was substantially greater than the white rate of rejection and that disparity was statistically significant at greater than three standard deviations from what would be expected in the absence of racial discrimination. Black applicants for Graduate Civil Engineer had their applications accepted at rates substantially less than 80% of the acceptance of white applications for that job classification. By1982, the Defendant had only one black civil engineer among the more than 700 civil engineers employed at ALDOT, and that one black

4

civil engineer had been hired only as a result of pressure from the Federal Highway Administration and the United States Department of Justice. It was only through such federal pressure that the one African-American civil engineer was able to slip through the racially discriminatory accreditation requirement by graduating from the accredited civil engineering program at Southern University in Louisiana.

13. By 1982, the Defendant faced the prospect of additional black civil engineering students who began to be enrolled in the accredited civil engineering programs at the historically white University of Alabama and Auburn University. When ten African-American civil engineering graduates from such accredited programs managed to make it onto the register for hiring as a Graduate Civil Engineer in 1982, the Defendant suddenly abolished that register and adopted a new policy which disproportiontely disqualified them by requiring that applicants must henceforth possess an Engineer-In-Training ("EIT") certificate to be eligible to apply for graduate civil engineeering positions. The Application Announcement posted on March 30, 1983 conditioned eligibility to apply for Graduate Civil Engineer on possession of such an EIT certificate. *SPD Announcement for Graduate Civil Engineer – 20430* (March 30, 2003). That Announcement also stated: "The qualifications shown above will be rigidly applied in reviewing applications." *Id.* As a result, the register for hiring as a Graduate Civil Engineer became disproportionately white once again. None of the ten black graduates of accredited

5

civil engineering programs at historically white universities who had been previously determined to be qualified for hiring as a Graduate Civil Engineer were able to re-apply for that job after the register they were on was abolished and the new EIT restriction was imposed in March 1983. That EIT requirement, however, had never been imposed on the more than 700 white civil engineers who ALDOT had previously hired, all of whom were able to successfully perform their civil engineering duties and responsibilities without an EIT certificate.

14. The Application Announcement re-opening the period to apply for Graduate Civil Engineer in March 1983 also stated the following additional restriction: "Graduation from a four-year college or university with a Bachelor's Degree in Civil Engineering or Civil Engineering Technology within the last 5 years. *** Applicants will be removed from the employment register after their degree is over four years old." *Id*

15. The EIT required education and expertise in areas that were not valid, job related qualifications for civil engineering at ALDOT.

16. The EIT was imposed instead for racially disparate reasons and impact.

17. In late 1985 or early 1986, Plaintiff filed an application with SPD to be hired as a Graduate Civil Engineer at ALDOT.

18. On or about January 11, 1986, Plaintiff's application was rejected because of his race and Defendant's racially discriminatory EIT restriction and recency of degree requirement.

19. Plaintiff's application was rejected on or about January 11, 1986 because of his lack of the EIT as his EIT certificate had expired.

20. In 1985, ALDOT had over 600 white employees and **no** black employees in its Civil Engineer classification.

21. After his initial application was rejected, plaintiff was interested in additional geographic areas for employment with ALDOT.

22. Job titles performed by Graduate Civil Engineers are also often performed by Civil Engineers. In other words, a vacancy filled by a Civil Engineer which does not require college training could be filled by a Graduate Civil Engineer at ALDOT's discretion.

23. Each individual job position at ALDOT has a position number (also known as PCQ#s). These same position numbers were often transferred from one location to another.

24. Plaintiff was discouraged from filing additional applications for Civil Engineer Graduate due to the rejection of his 1986 application.

25. Defendant's EIT requirement was part of a battery of racially discriminatory devices, requiremements and practices that denied the Plaintiff and

7

other African-Americans employment opportunities because of their race and color, either intentionally, by disparate impact or both. The black rate of rejection based on the EIT was substantially greater than the white rate of rejection and that disparity was statistically significant at greater than three standard deviations from what would be expected in the absence of racial discrimination. Here again, black applicants for Graduate Civil Engineer had their applications accepted at rates substantially less than 80% of the acceptance of white applications for that job classification.

26. As a result, Plaintiff was not hired by the Defendant for the next seventeen years even though he remained interested in being hired as a Graduate Civil Engineer for ALDOT throughout the period from 1986 to 2002 when he was eventually hired by ALDOT and ALDOT continued to seek out and hire Graduate Civil Engineers. Substantial numbers of Graduate Civil Engineering positions were filled in the counties Plaintiff was interested in working.

27. Plaintiff was eventually hired in Franklin County in August 2002 after the Defendant belatedly did away with the EIT and other practices which perpetuated their past racial discrimination, had disparate impact on the Plaintiff and other persons of his race and color, and/or intentionally discriminated against the Plaintiff on the basis of race.

28. Plaintiff's statutory limitations period has been tolled for the period since 1979 though the date of filing of this judicial Complaint because he was a member of the hiring class certified in the case of *Reynolds v. ALDOT*. *See Notice Of Decertification Of Class Action And Need To Take Action To Preserve Claims* approved by the *Reynolds* Court and attached hereto. The Hiring Class in that case included all African-Americans who were denied hiring opportunities with ALDOT since May 21, 1979. The Plaintiff in the current case was a member of such class who relied on *Reynolds'* tolling of class members' limitations period in order to remedy the racial discrimination in hiring that he experienced since May 21, 1979.

29. The current case was filed in this Court within the time allowed by the tolling of the limitations period in *Reynolds*. On January 6, 2016, the *Reynolds* Defendant mailed the Court-ordered notice that the claims of the Hiring Class could no longer proceed as a class action, that the limitations periods of the members of such class which would have expired since May 21, 1979 in the absence of such class certification were tolled through January 6, 2016, and that "individuals who were previously members of the Hiring Class and who wish to pursue hiring claims against one or more of the Defendant must now bring their claims as individual lawsuits." *Notice of Decertification of Class Action and Need to Take Action to Preserve Claims* of January 6, 2016 at 1, *Reynolds v. ALDOT*, cv 85-T-66-5-N (M.D. Ala. 1986). The current Plaintiff and other individual members of the

9

*Reynolds* hiring class were sent the following Notice of such tolling rights on January 6, 2016:

## NOTICE OF DECERTIFICATION OF CLASS ACTION AND NEED TO TAKE ACTION TO PRESERVE CLAIMS

\* \* \*

YOU ARE HEREBY NOTIFIED, that the Court by Order dated March 19, 2015, has determined that certain claims previously brought in the name of the Reynolds Hiring Class can no longer proceed as a class action and that individuals who were previously members of the Hiring Class and who wish to pursue hiring claims against one or more of the Defendant must now bring their claims as individual lawsuits.

\* \* \*

### IV. DESCRIPTION OF THE ACTION

Plaintiffs filed the Reynolds lawsuit on May 21, 1985, on behalf of themselves and other similarly situated African-Americans, claiming that Defendant had committed acts of race discrimination in employment since May 21, 1979, in violation of the Fourteenth Amendment to the U. S. Constitution, 42 U.S.C. § 2000e through 2000e-17 (commonly known as Title VII of the Civil Rights Act) and 42 U.S.C. §§ 1981, 1983.

\* \* \*

### V. EFFECT OF CLASS DECERTIFICATION

Because the Court has determined that none of the claims of the Hiring Class will continue to proceed on a class action basis, former members of the Hiring Class who wish to bring hiring claims must pursue their claims in individual lawsuits. As a result, the effect of the Court's decertification Order on your individual hiring claim is as follows:

\* \* \*

> (3)  If you wish to file a lawsuit based on Title VII of the Civil Rights Act you must first file a charge with the Equal Employment Opportunity Commission ("EEOC"). This charge should be filed with the EEOC within 180 days of this Notice. The EEOC will process your charge and only after it has done so and issued you a Right To Sue letter, can you file your individual Title VII lawsuit. If you do not have an attorney, the EEOC will assist you in the filing of a charge. **Failure to file an EEOC charge within 180 days of receiving this Notice may keep you from filing a Title VII lawsuit against one or more of the Defendant.**
>
> \* \* \*
>
> ### VI.  APPLICATION OF STATUTES OF LIMITATIONS
>
> \* \* \*
>
> The applicable statutes of limitations for your individual hiring claim was suspended during the pendency of the Hiring Class's certification, but with the decertification of the Hiring Class, the statutes of limitations will start to run again and affect your right to file an individual lawsuit.

*Notice of Decertification of Class Action and Need to Take Action to Preserve Claims* at 1-4 (emphasis in original).

30.  The Plaintiff herein filed such an EEOC Charge within the foregoing 180 days from the date of the *Notice* ordered by the *Reynolds* court. The type of claims asserted in this case are the same as those asserted on the current Plaintiff's behalf as a member of the hiring class in *Reynolds*. The claims in *Reynolds* that tolled the limitations periods for the current Plaintiff and all other members of the Hiring Class in that case included individual claims of both disparate impact and intentional disparate treatment. The *Reynolds* claims under the Fourteenth

11

Amendment and Sections 1981 and 1983 of the civil rights statutes were exclusively for intentional racial discrimination, while the claims under Title VII were for disparate impact, intentional disparate treatment or both, as shown by the following Orders in *Reynolds*:

a. On October 8, 1986, the Reynolds Court certified three classes asserting claims of disparate treatment and disparate impact by not hiring or promoting class members "because of race":

> Both Boleware and Reynolds allege, among other things, that the highway department has passed them over for promotions **because of their race.** \*\*\*Maxwell contends that this treatment is part of a pattern practiced by the department upon black persons **because of their race**.
> The second class--that of black non-merit system employees who have unsuccessfully sought merit jobs--would be represented by non-merit employee Belser. \*\*\*She contends that the department's refusal to hire her for these jobs constituted **race-based discrimination**.
> Allen and Brown would represent class three, non-employees who unsuccessfully applied for merit jobs. Allen applied for and was refused a position as a graduate civil engineer with the highway department in late 1982 or early 1983. She is currently employed in that capacity with the Georgia Department of Transportation and she alleges that she was not hired by the Alabama highway department **because of unlawful race discrimination**. Brown too applied for the position of graduate civil engineer and was not hired. He avers that, **but for his race**, he would have been hired for that position.

*Order* entered October 8, 1986 at 2-3(ECF Doc. No. 82) in *Reynolds v. ALDOT*, cv 85-T-66-5-N (M.D. Ala. 1986)(emphasis added).

12

b. On October 7, 1991, the Reynolds Court entered a Pretrial Order which defined the class and individual claims in the case to include both individual disparate treatment and disparate impact as follows:

> The plaintiffs contend that the defendant racially discriminate **individually** and on a classwide basis in the selection and training process for job opportunities (including hiring...) * * * The plaintiffs contend that this discrimination is accomplished by a variety of means which involve disparate treatment, disparate impact, or **both**..."

*Pretrial Order* entered October 7, 1991 at 4 (ECF Doc. No. 339) in *Reynolds v. ALDOT*, cv 85-T-66-5-N (M.D. Ala. 1986)(emphasis added).

c. The same Pretrial Order further defined the class and individual disparate treatment and disparate claims to be tried as follows:

> [T]he following are practices which are part of the discriminatory selection system which is challenged:
>
> a. Entrance requirements for filing a valid application and being eligible to be examined and ranked on a register;
>
> * * *
>
> e. The use of education requirements, either as an entrance or eligibility requirement or as an element in scoring, ranking, certifying or selecting;
>
> * * *
>
> g. The use of qualifying certificates or statuses, either as an entrance or eligibility requirement or as an element in scoring, ranking, certifying, or selecting;
>
> * * *
>
> n. Racial bias in selection decisions [and] assessment of qualifications....;
>
> * * *

jj.     The cumulative effect on the entire recruitment, screening and selection process;

Each of the named plaintiffs and intervenors, on behalf of himself and the class, also preserve and incorporate by reference the contentions and positions set forth in the prior Pretrial Order entered in this case, including, but not limited to, the following:

\* \* \*

m.     On various occasions, when presented with black applicants who possessed the written qualifications necessary for acceptance into . . . the position of Graduate Civil Engineer, the Highway Department revised the written qualifications for the position in such a manner that the previously qualified black applicants became unqualified for the position.

\* \* \*

As a further supplement to the statement of their position already set forth above, the named individual plaintiffs and intervenors state the following:

\* \* \*

c.     <u>Peggy Von-Sherie Allen</u>

Ms. Allen graduated from the University of Alabama with a B.S. degree in Civil Engineering Technology in 1984. Ms. Allen applied for positions as a **graduate civil engineer** and an environmental position with the Alabama Highway Department. Ms. Allen was not selected for the position and whites were selected.

Ms. Allen complains that the Personnel Department and Highway Department use of the EIT . . . **discriminates** against blacks in that it is not job related and is merely utilized in order to discourage or cause blacks to fail in the selection process.

Ms. Allen complains of **discrimination in hiring**, selection decisions and procedures, testing, compensation, and other terms and conditions of employment. The plaintiff was discouraged and deterred

from seeking further positions because of discriminatory practices, history, reputation, and perception of the defendant.

\* \* \*

e. Jeffrey Brown

Plaintiff, Jeffrey Brown, graduated from the University of Alabama in May of 1982 with a Bachelor of Science Degree in Civil Engineering Technology.

\* \* \*

After graduating from the University of Alabama, Mr. Brown applied for the position of **Graduate Civil Engineer**. Again, Mr. Brown did not receive the position and a white employee was chosen.

Mr. Brown complains that the Personnel Department and Highway Department use of the EIT . . . **discriminates against blacks** in that it is not job related and is merely utilized in order to discourage or cause blacks to fail in the selection process.

*Pretrial Order* entered October 7, 1991 at 5-19 (ECF Doc. No. 339) in *Reynolds v. ALDOT*, cv 85-T-66-5-N (M.D. Ala. 1986)(emphasis added).

d. On November 19, 1996, the Court entered a Pretrial Order defining class members' individual claims at Stage II of the bifurcated trial in *Reynolds* to include individual claims of both disparate treatment and disparate impact, stating the "Defendant Position" as follows: "each class member's claim must be proven as required by **either** disparate treatment or disparate impact theory." *Pretrial Order* entered November 19, 1996 at 4-5 (ECF Doc. No. 1333) in *Reynolds v. ALDOT*, cv 85-T-66-5-N (M.D. Ala. 1986)(emphasis added).

15

## VI. CAUSES OF ACTION

### COUNT I - INTENTIONAL RACE DISCRIMINATION AND DISPARATE TREATMENT IN VIOLATION OF TITLE VII

31. Plaintiff realleges and incorporates by reference paragraphs 8-30 above with the same force and effect as if fully set out in specific detail hereinbelow.

32. Defendant ALDOT intentionally discriminated against the Plaintiff because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, including, but not limited to rejecting his employment application because of the racially discriminatory EIT requirement set forth in paragraphs 13-26 above. Plaintiff suffered intentional disparate treatment because of his race and color. Among other facts, white applicants for GCE were not required to have an EIT certificate until black applicants began to appear on the GCE register.

33. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, equitable relief, backpay (plus interest), an injunction, and compensatory damages are his only means of securing adequate relief.

### COUNT II - ADVERSE IMPACT IN VIOLATION OF TITLE VII

34. Plaintiff realleges and incorporates by reference paragraphs 13-26 above with the same force and effect as if fully set out in specific detail hereinbelow.

16

35. Defendant discriminated against the Plaintiff because of his race by subjecting him to recruitment and selection procedures and criteria that perpetuate Defendant' past racial discrimination and otherwise have disparate impact on the Plaintiff individually and other African-Americans, including, but not limited to: rejecting Plaintiffs' application and refusing to hire him as a Graduate Civil Engineer because of the racially discriminatory EIT requirement set forth in paragraphs 13-26 above. Such selection procedures and criteria have disparate impact on the Plaintiff and other African-Americans in violation of Title VII.

36. Defendant ALDOT and SPD have maintained a custom, policy or practice of discrimination and the treatment of the Plaintiff was pursuant to that custom, policy or practice.

## VII. **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Grant the Plaintiff a permanent injunction enjoining the Defendant its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate Title VII of the Civil Rights Act of 1964, as amended.

2. Enter an Order requiring the Defendant to make the Plaintiff whole by determining the classification he would have enjoyed at his retirement absent

discrimination, awarding him backpay (plus interest), compensatory damages, lost seniority, lost pension and other fringe benefits, and nominal damages,

3. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Dated November 24, 2020.

Respectfully submitted,

*/s/ Russell W. Adams*

Robert L. Wiggins, Jr. (ASB-1754-G63R)
Russell W. Adams (ASB-3760-A62R)
WIGGINS, CHILDS, PANTAZIS, FISHER
& GOLDFARB
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

**PLAINTIFF HEREBY DEMANDS TRIAL BY STRUCK JURY.**

*/s/ Russell W. Adams*
**OF COUNSEL**

**DEFENDANT'S ADDRESS:**
**State of Alabama Department of Transportation**
**ALDOT Administrative Office**
**1409 Coliseum Boulevard**
**Montgomery, Alabama 36110**